*Decision will be entered under Rule 50.*

ROGERS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65517, 72157. Filed January 27, 1960.

*Paul V. Power, Esq.*, and *Richard N. Bail, Esq.*, for the petitioner.
*Frank V. Moran, Jr., Esq.*, for the respondent.

732

OPINION.

OPPER, *Judge:* When the Congress substituted the provisions[1] of section 443 (Korean war), Excess Profits Tax Act of 1950, for those previously included in section 722(b)(4)[2], it seems clear it was not bent upon enlarging the relief available.[3] Since the subject matter covered in both sections was in general some change in the base period operation of the business, we can safely assume at the outset that only changes, that is, the advent of something new, were intended[4] to be covered by section 443.

Granting for present purposes that petitioner's operation under its contract with Bakelite prior to July 31, 1949, was different from that subsequently engaged in, that alone is far from sufficient. Not only must the change have been "substantial," but it must have been so in the sense that, following the introduction of the "new" products

---

[1] SEC. 443. AVERAGE BASE PERIOD NET INCOME—CHANGE IN PRODUCTS OR SERVICES.

(a) IN GENERAL.—If a taxpayer which commenced business on or before the first day of its base period establishes with respect to any taxable year that—

(1) During so much of its three immediately preceding taxable years as falls within the 36-month period ending on the last day of its base period, there was a substantial change in the products or services furnished by the taxpayer,

(2) More than 40 per centum of its gross income or 33 per centum of its net income for such taxable year is attributable to one or more of the new products or services, and

(3) Its average monthly excess profits net income (determined under subsection (e)) for such taxable year exceeds 125 per centum of its average monthly excess profits net income (determined under subsection (e)) for the taxable years ending within its base period and prior to the taxable year in which the first change to which gross income is attributed for the purpose of this subsection occurred,

then, in computing its excess profits credit for taxable years under this subchapter which end on or after the last day of the earliest taxable year with respect to which the requirements of paragraphs (1), (2), and (3) are satisfied, its average base period net income determined under this section shall be the amount computed under subsection (b).

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

      *       *       *       *       *       *       *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. * * * For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, * * *

[3] "Your committee is aware of the fact that the relief provided by section 722(b)(4) of the prior law was available in several areas beyond that involving solely a change in products or service to which the present bill is limited. * * *" (H. Rept. No. 3142, 81st Cong., 2d Sess. (1950), p. 19.)

[4] "Corporations which commenced business before the base period and made substantial changes in their products or services during the last 36 months of the base period may elect a substitute base period net income. This provision is intended to replace the 'new products' adjustment authorized under section 722(b)(4) of the World War II law. * * *" (S. Rept. No. 2679, 81st Cong., 2d Sess. (1950), p. 21.)

or services, the gross or net income from such products must aggregate more than 40 or 33 per cent, respectively.[5]

Here, if any, only a limited number of aspects can be thought of as "new" or "changed" from petitioner's previous operations. It manufactured a part of the resins used instead of having them all furnished by Bakelite, it sold direct to some customers instead of through Bakelite, and it developed "RX" and "Duroid 600." But for all that appears, the bulk of the services or products contributed by its Manchester plant was identical or similar to what had gone on before. There has been no showing that any changes in products were "substantial" as that word is used in the statute. There are not, in fact, any figures whatever from which such a comparison could be drawn.

We are accordingly unable to find that petitioner meets the statutory qualification for relief under section 443.

*Decisions will be entered for the respondent.*

---

[5] "To qualify for relief under the 'new product' provision the change in products or services must have been 'substantial' in the sense that by the end of the third year (or earlier) following the year in which the products or services were introduced, the gross income from such products must aggregate to more than 40 percent of the taxpayer's gross income or 33 percent of the taxpayer's net income in that year. * * *" (Excess Profits Tax Act of 1950, As Agreed to by the Conferees (Dec. 1950) p. 14.)